## LINGLE ET AL. *v.* KITCHEN, ADMINISTRATRIX.

INSTRUCTION.—*Replevin.*—*Demand.*—*Measure of Damages.*—A chattel which had been sold and paid for, but not delivered, was left by the vendor with a third party to be repaired and then delivered by the latter to the vendee; but the vendor, after having notified such third person not to deliver the chattel to the vendee, sent his employee and removed the same. Replevin for the chattel having been instituted by the vendee's administratrix, against the vendor and his said employee, and evidence of the foregoing facts, and of the value of the use of the chattel from the date it was so removed, having been given without objection, and the defendants having admitted the making of a demand, but stating no date, the court instructed the jury that the plaintiff, if entitled to recover, should recover damages from the time of the "taking."

*Held,* that the defendants can not complain of the instruction.

From the Tippecanoe Superior Court.

*J. F. McHugh, W. D. Wallace* and *A. Rice,* for appellants.
*M. Jones* and *J. L. Miller,* for appellee.

NIBLACK, J.—The appellee, Martha J. Kitchen, as administratrix of the estate of Sylvester J. Kitchen, deceased, brought this action against the appellants, William S. Lingle and Thomas Coleman, to recover the possession of an open buggy, and damages for its detention.

The defendants answered in general denial; and, upon a second trial, the jury trying the cause returned a verdict for the plaintiff, fixing the value of the buggy at one hundred and fifty dollars, and assessing her damages for its detention at one hundred and fifty dollars.

After considering and overruling motions for a new trial, severally made by the defendants, the court rendered judgment upon the verdict.

The appellants maintain that the damages were excessive, and that the court below erred in one of its instructions to the jury.

On the trial, there was evidence tending to show that in July, 1876, the plaintiff's intestate, Sylvester J. Kitchen, being then in life, purchased the buggy in controversy from the appellant Lingle, for two hundred dollars, payable ten dollars in money and the rest in dry goods; that Lingle soon afterward received of Kitchen money and goods, amounting in the aggregate to a little more than two hundred dollars; that thereupon Lingle placed the buggy in a carriage shop in the city of Lafayette, to have some work done upon it, telling the proprietors that he had sold the buggy to Kitchen, and leaving the impression upon their minds that they would be authorized to deliver the buggy to Kitchen, if he should call for it when it was ready for use; that, not long afterward, Lingle gave the proprietors of the carriage shop notice not to deliver the buggy to Kitchen; that afterward, that is to say, in the latter part of August, 1876, the appellant Coleman, who was an employee of Lingle, took the buggy away from the carriage shop, and that, from that time until the time of the trial, which was in November, 1877, the buggy was in almost daily use upon the streets by the appellants. Evidence was also admitted, without objection, tending to show how much the use of the buggy was worth during the entire time it was used by the appellant, as above. At the conclusion of the appellee's evidence-in-chief, the appellants admitted that the buggy had been demanded of them, but without any indication or agreement as to the time at which the demand was made.

Upon the trial, the appellants contended that the money and goods received by Lingle from Kitchen were properly applicable, and were in fact applied, to an alleged older indebtedness from Kitchen to Lingle, and this claim of the

appellants seemingly constituted the only serious contest between the parties at the trial.

The court, with other instructions, gave the following:

" Upon the question of damages I instruct you that the measure of damages is the value of the use of the buggy. If you believe that she (the plaintiff) is the owner of the buggy, and that it has been detained by the defendants, the measure of the damages is the value of the use of the buggy from the time it was taken, if it was taken, up to this time. You must look to the evidence to ascertain what this value is. The measure of the damages is the value of the use of the buggy during the time the defendants have unlawfully detained it, if you find they have so unlawfully detained it."

The appellants insist that the court ought to have instructed the jury, that the plaintiff was only entitled to damages, in any event, from the time of the demand, and not during the entire time the appellants had possession of the buggy, after their alleged taking of it from the carriage shop, and that hence the instruction set out as above was erroneous ; also, that, as no unlawful " taking " of the buggy was charged in the complaint, this instruction was inapplicable, and consequently calculated to mislead the jury.

As evidence tending to show the value of the use of the buggy from the time it was taken from the carriage shop until the time of the trial was permitted to go to the jury without objection, and as no time was indicated at which the buggy was demanded, we can not say that the court erred in assuming that the appellee was entitled to damages for the entire time the appellants had used the buggy, in case she was shown to have been the owner of such buggy under her husband's alleged purchase of it before the appellants commenced to use it.

The cause appears to have been tried upon the theory, that the appellee, if entitled to recover at all, was entitled

to recover damages for all the time the appellants used the buggy after it left the carriage shop, and to that theory the appellants seem to have made no objection upon the admission of the evidence to the jury.

The hypothetical "taking," referred to in the instruction, was evidently intended to refer to the "taking" of the buggy from the carriage shop by Coleman, as a period of time at which the jury, under the evidence, might find that the alleged unlawful detention began, and not to any supposed unlawful "taking," as constituting the gist of the action.

Without further comment, we need only say, that we see nothing in the instruction under consideration, of which the appellants have any good reason to complain. Sedgwick Damages, 582, *et seq.*

The appellants filed two affidavits in support of their respective motions for a new trial, setting up facts tending to show that the demand, which they admitted upon the trial had been made on them, was not made until July, 1877. But, as the matters thus set up in these affidavits were not before the jury as evidence in the cause, they presented nothing for the consideration of the court while ruling upon the motions for a new trial.

While, as to the damages recovered, the case is not a satisfactory one to us on the evidence, we are unable to see any sufficient reason for disturbing the verdict on that account, as the question of the damages seems to have received but little attention on the trial.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.